## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| H.H., individually and on behalf of all others similarly situated; and V.G., individually, and on behalf of all others similarly situated;<br><br>        Plaintiffs,<br><br><br>    v.<br><br>AETNA LIFE INSURANCE COMPANY;<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR VIOLATION OF:<br><br>1)  29 U.S.C. § 1132(a)(1)(B)<br>2)  29 U.S.C. § 1132(a)(3) |

NOW COMES plaintiff H.H., by and through his father, J.H., and V.G., by and through her father, C.G., who, on their own behalf and on behalf of all others similarly situated, assert to the best of their knowledge, information and belief, formed after inquiries reasonable under the circumstances, the following:

### INTRODUCTION

1.    This action, brought under the Employee Retirement Income and Security Act, 29 U.S.C. §§ 1001-1191c, arises from defendant's arbitrary decision to deny coverage for medically necessary mental health and substance use services when provided by licensed (a) wilderness therapy programs and (b) residential treatment centers even though the plans at issue facially covered both treatment services.

2.      As to medically necessary services rendered at licensed wilderness therapy programs, defendant imposes a blanket exclusion for such services. Defendant's coverage position, however, cannot be squared with its coverage obligations as expressed by its own Plan documents. This results in a straightforward claim for plan enforcement.

3.      As to services rendered at residential treatment centers, defendant violates the federal Mental Health Parity Act by imposing a blanket exclusion for medically necessary services to treat mental health and drug addiction issues at residential treatment center programs, even though defendant covers medical treatment provided in other types of intermediate residential programs, such as skilled nursing care. This violates the Federal Mental Health Parity Act and its implementing regulations, which are  incorporated into the terms of the Plan.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

5.      Venue is appropriate in this district because at least one of the plaintiffs is a citizen of this judicial district, and defendant does business within this judicial district and/or may be found here, and some of the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

6.      In conformity with 29 U.S.C. § 1132(h), plaintiffs have served this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7.     At relevant times, C.G. was a full-time employee of UBS Group AG and was a citizen of Jupiter, Florida.  His employer-sponsored health insurance at relevant times was administered by Aetna Life Insurance Company, and is regulated by ERISA, 29 U.S.C. §§ 1001-1191c.  Under ERISA, C.G. is a "plan participant" (29 U.S.C. § 1002(7)). A copy of the insurance plan is attached at **Exhibit A** to this Complaint; it is a boilerplate document whose material terms are identical for all similar insureds.

8.     At relevant times, J.H. was a full-time employee of Trackvia, Inc. and lived in Boulder, Colorado.  His employer-sponsored health insurance at relevant times was underwritten and administered by Aetna Life Insurance Company, and is regulated by ERISA, 29 U.S.C. §§ 1001-1191c.  Under ERISA, J.H. is a "plan participant" (29 U.S.C. § 1002(7)). J.H.'s Aetna Life health insurance was a fully insured plan. A copy of the insurance plan is attached at **Exhibit B** to this Complaint; it is a boilerplate document whose material terms are identical for all similar insureds.

9.     Defendant Aetna Life Insurance Company is a Connecticut corporation that does business within this judicial district.  Aetna Life provides group disability, basic life, dependent life, accidental death, personal loss, long-term care, and supplemental insurance products. The company also offers beneficiary management services. The company was founded in 1850 and is based in Hartford, Connecticut. Aetna Life Insurance Company, Inc. operates as a subsidiary of Aetna Inc.

10.     In this Complaint, "Aetna Life" refers to the named defendant and all related, successor, predecessor, parent and subsidiary entities to which these allegations pertain.

11.     Aetna Life had full discretionary authority to administer and pay benefits under both of the plaintiffs' plans and accordingly owes fiduciary obligations to them and to similarly situated plan participants and beneficiaries.

## FACTS

**Wilderness Therapy**

12.     V.G. is C.G.'s daughter. V.G. was covered under C.G.'s plan and is thus entitled to receive health insurance coverage based on the same plan language as her father. V.G. has struggled for years with mental health issues such as ADHD, autism and suicide ideation.

13.     On March 6, 2016, after outpatient treatment and other therapies had not been successful, V.G.'s therapist recommended that she go to Aspiro Group, Inc., a wilderness therapy program located in Mount Pleasant, Utah.

14.     Aspiro is an intermediate mental health treatment program licensed by the state of Utah as an Outdoor Youth Treatment program. It treats young men and women with mental health and substances abuse diagnoses, including young men and women with mental illness comparable to V.G.

15.     Aspiro uses a multidisciplinary approach to treat youths with mental health and substance abuse diagnoses.  It provides evidence-based behavioral health treatment in a residential setting.

16.     Patients at licensed wilderness programs, including V.G., typically receive a psychiatric assessment on intake.  Individual treatment plans with tailored goals, objectives, and assignments are developed, implemented and evaluated by mental health providers.  Patients live in a communal environment and participate in a comprehensive medical treatment regimen, including structured therapeutic tasks, individual, family and group therapy sessions.

17.     C.G. sought coverage for his daughter's treatment at Aspiro from between March 6, 2016 to May 4, 2016. C.G. personally paid $28,500 for these services rendered at Aspiro.

18.     Aetna Life denied the claims submitted for V.G.'s treatment at Aspiro on March 9, 2016 on the grounds that the services were rendered at "a Wilderness Treatment Program or any such related or similar program [sic] school or educational services." C.G. appealed this denial on August 24, 2016, which Aetna affirmed October 22, 2016. On December 20, 2016, C.G. again appealed the decision, which Aetna again affirmed as a "Final Appeal Decision" on January 26, 2017 for the following single reason: "Under the plan, benefits are not available for out of network residential programs unless … they are not a wilderness treatment program or such related or similar program, school and/or education service." This decision exhausted Aetna's required internal appeal procedure.

**Residential Treatment Center Programs**

19.     H.H.is J.H.'s son. H.H. was covered under J.H.'s plan and is thus entitled to receive health insurance coverage based on the same plan language as his father.

H.H. has struggled for years with mental health issues such as anxiety, depression, and suicide ideation.

20.     On March 29, 2016, after outpatient treatment, hospitalization, and other therapies had not been successful, H.H.'s therapist recommended that he go to Open Sky Wilderness Therapy, located in Durango, Colorado.

21.     Open Sky is an intermediate mental health treatment program licensed by the state of Colorado as a Residential Child Care Facility. It treats young men and women with mental health and substances abuse diagnoses, including young men and women with severe mental illness comparable to H.H.

22.     Open Sky uses a multidisciplinary approach to treat youths with mental health and substance abuse diagnoses.  It provides evidence-based behavioral health treatment in a residential setting.

23.     Patients at licensed residential treatment center, including H.H., typically receive a psychiatric assessment on intake.  Individual treatment plans with tailored goals, objectives, and assignments are developed, implemented and evaluated by mental health providers.  Patients live in a communal environment and participate in a comprehensive medical treatment regimen, including structured therapeutic tasks, individual, family and group therapy sessions.

24.     J.H. sought coverage for his son's treatment at Open Sky from March 29, 2016 to June 29, 2016. J.H. personally paid $ 45,105 for services rendered at Open Sky.

25.     Aetna Life denied the claims submitted for H.H.'s treatment at Open Sky on Oct. 29, 2016 on the grounds that "[t]he service requested must not be a Wilderness

Treatment Program or any such related or similar program, school, and/or education service. Therefore, residential treatment is not covered under the terms of the plan."

26.     J.H. appealed Aetna Life's coverage decision, which it affirmed on May 20, 2017.  Aetna Life claimed that the denial was affirmed because "[t]he facility does not provide a level of service consistent with the description of a residential treatment program."

27.     J.H. invoked Aetna Life's second level of appeal, and again, on August 17, 2017, Aetna Life affirmed its original denial and first appeal denial, citing a policy exclusion that purports to eliminate coverage for "[a]lcoholism or substance abuse rehabilitation treatment on an inpatient or outpatient basis, except to the extent coverage for detoxification or treatment of alcoholism or substance abuse …[and] [t]reatment of a covered health care provider who specializes in the mental health care field and who receives treatment as a part of their training in that field … [and] [t]reatment in wilderness programs or other similar programs." This second appeal exhausted Aetna Life's mandatory internal appeal process.

**Aetna's Coverage Obligations**

28.     In general, Aetna Life covers services that are medically necessary. (**Exhibit A, p. 14, Exhibit B, p. 16**).

29.     Aetna Life did not challenge the medical necessity of the services performed by either Aspiro or Open Sky.

30.     Among the services covered and/or authorized by Aetna Life plan: services provided at skilled nursing inpatient facilities (**Ex. A at p. 27; Ex. B. at 9, 28, 34**) and home health care services (**Ex. A at p. 27; Ex. B at 9**).

31.     The plan that covers V.G. is identified on the plan documents as an Aetna PPO plan.

32.     Under the Aetna PPO, beneath the heading "Mental Health and Substance Abuse Rehabilitation Services," Aetna covers or authorizes for coverage "[i]npatient mental health services," which includes mental health residential treatment services. (**Ex. A, p. 31**). Mental health residential treatment services is defined as "[s]ervices for the evaluation and treatment of the psychological and social functional disturbances that are the result of subacute mental health conditions provided by an institution which specializes in the treatment of mental health conditions, provides a subacute, structured, psychotherapeutic treatment program under the supervision of physicians; provides 24-hour care in which a person lives in an open setting; and is licensed in accordance with the laws of the appropriate legally authorized agency." Under that definition, Aspiro and all other licensed wilderness therapy programs provide "inpatient mental health services." There is no applicable exclusion concerning wilderness therapy, and Aetna doesn't identify one in its denial documents.

33.     The program covering H.H. is identified in the plan documents as an "Open Access Managed Choice" Aetna Plan.

34.     Among the plan's exclusions is the following, under the heading "Behavioral Health Services":

- Alcoholism or substance abuse rehabilitation treatment on an inpatient or outpatient basis, except to the extent coverage for detoxification or treatment of alcoholism or substance abuse is specifically provided in the What the Medical Plan Covers Section.

- Treatment of a covered health care provider who specializes in the mental health care field and who receives treatment as a part of their training in that field.

- Treatment of impulse control disorders such as pathological gambling, kleptomania, pedophilia, caffeine or nicotine use.

- Treatment of antisocial personality disorder.

- Treatment in wilderness programs or other similar programs.

- Treatment of mental retardation, defects, and deficiencies. This exclusion does not apply to mental health services or to a medical treatment of mentally retarded in accordance with the benefits provided in the What the Medical Plan Covers section of this Booklet-Certificate. (**Ex. B at p. 44).**

35.    In the What the Plan Covers section, Aetna Life states that it covers both inpatient and treatment at a residential treatment facility for the treatment of mental disorders and substance abuse. (**Ex. B at p. 41-42**). Aetna Life also covers services rendered at skilled nursing facilities (**Ex. B at p. 28**).

## CLASS ALLEGATIONS

36.    Plaintiffs bring this lawsuit under Fed. R. Civ. P. 23(a)(1)-(4) and (b)(1), (b)(2) and/or (b)(3) on his own behalf and on behalf of the following classes:

> *All persons who are covered under any ERISA-governed self-insured health benefit plan (1) with similar mental health and substance abuse coverage grants and exclusions to the plan covering V.G. (2) that is administered by Aetna Life and (3) who required treatment at one or more licensed wilderness therapy programs during the applicable class period.* **This is called the Aetna Wilderness PPO Class. V.G. is its class representative.**

-and-

> *All persons who are covered under any ERISA-governed health benefit plan fully-insured by Aetna Life that covers mental or nervous disorders or substance abuse care and who required treatment at one or more licensed residential treatment centers during the applicable class period.* **This is called the Aetna RTC Fully Insured Class. H.H. is its class representative.**

37.     The class period for the claims brought under 29 U.S.C. § 1132(a)(1)(B) extends five years back from the date of the commencement of this action;  the claim under § 1132(a)(3)  extends back six years from the date of the commencement of this action.

38.     Membership in the proposed classes is so numerous that individual joinder of all class members is impracticable except by means of a class action.  The disposition of the claims in a class action will benefit both the parties and the Court.

39.     Plaintiffs' claims are typical of all other class members.  Plaintiffs, like all other class members, required treatment at either a licensed wilderness therapy or licensed residential treatment center program. Plaintiffs, like all other class members, did not receive coverage of that treatment due to defendant's standard practice of excluding from coverage the services rendered at these types of facilities.

40.     Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the classes they seek to represent and plaintiffs are members of the class that they seek to represent.

41.     Plaintiffs will adequately represent the classes because they have interests in common with the proposed class members and plaintiffs have retained attorneys who are experienced in class action litigation.

42.     Common questions of law and/or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

- Whether defendant's formulation of its own coverage obligations breaches its plan because medically necessary services rendered at (a) wilderness therapy programs and/or (b) residential treatment centers are covered under the respective Aetna plan; and if not, then

- Whether defendant's standard practice of excluding  coverage for mental health and substance use services rendered at licensed residential treatment center programs violate the federal Mental Health Parity and Addiction Equity Act.

43.     The prosecution of separate actions by individual members of each of the classes would create a risk of:

- Inconsistent or varying adjudications concerning individual members of the classes that would establish incompatible standards of conduct for defendant; and

- Adjudication with respect to individual members of the classes that would, as a practical matter, be dispositive of the interests of other members not party to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

44.     The class action method is appropriate for the fair and efficient prosecution of this action.

45.     Individual litigation of all claims that might be asserted by all members of the classes would produce such a multiplicity of cases that the judicial system, having

jurisdiction of the claims, would remain congested for years.  Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of these related defendant.

46.     The certification of the above class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## LEGAL CLAIMS

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)
### Brought by the Aetna RTC Fully Insured Class

47.     H.H., on his own behalf and the proposed class, restates paragraphs 1 – 46 as if fully set forth.

48.     H.H.'s first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B).

49.     H.H. and the class have standing to assert claims "to recover benefits due … under the plan" and to "clarify [their] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

50.      Aetna Life has breached the terms of its health plans by denying coverage of treatment provided by residential treatment centers, as expressly authorized by its own plan. This caused injury to the plaintiff and the class.

51.     Plaintiff and the class he seeks to represent are entitled to recover benefits due them due to the improper exclusion of coverage of medically necessary mental health and/or substance abuse treatment in licensed residential treatment center programs. They are also entitled to a declaration of their rights to coverage of medically

necessary mental health and/or substance abuse treatment in licensed residential treatment center programs.

### Count 2 – Violation of Parity Act Under 29 U.S.C. § 1132(a)(1)(B) Brought by the Aetna RTC Fully Insured Class

52.     H.H., on his own behalf and on behalf of the proposed class, restates paragraphs 1 – 46 as if fully set forth.

53.     Plaintiff's second claim is for breach of the protections of the federal Mental Health Parity and Addiction Equity Act, whose terms are incorporated as a matter of law into Aetna Life's plan with plaintiff and class members. This claim is an *alternative* to Count 1 and is brought in the event the Court upholds defendant's interpretation of its own Plan.

54.     The Mental Health Parity Act mandates parity between the "treatment limitations" placed on mental health benefits and on medical/surgical benefits:

> In the case of a group health plan ... that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—
>
>> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan … and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

55.     The Parity Act instructed the Secretaries of Labor, Health and Human Services, and Treasury to issue "guidance and information" on the Parity Act's requirements. That guidance was originally provided in Interim Final Rules before

being issued as Final Rules.  These regulations set forth a step-by-step process to determine whether an exclusion – or an insurer's application of an exclusion – violates the Act.  ***First***, the relevant limitation must be identified.  A limitation can exist on the face of the Plan, or it may occur in application – both require parity. ***Second***, the service in question must be classified into one of six categories.  All services must be classified, including so-called intermediate services (those between inpatient and outpatient treatment). ***Third***, the exclusion or limitation of the mental health care services at issue must be compared to ***all*** of the medical/surgical limitations within that category to determine if the exclusion of the insured's mental health care is permitted:

> A group health plan … that provides both  medical/surgical benefits and mental health or  substance use disorder benefits may not apply any … treatment  limitation to mental health or  substance use disorder benefits in any classification that is more restrictive than the predominant … treatment  limitation of that type applied to substantially all  medical/surgical benefits in the same classification.

29 C.F.R. § 2590.712(c)(2)(i))(A); Preamble, IFRs, 75 Fed. Reg. at 5413.

    **56.**  The statutory requirements of the Parity Act become "terms of" the Plan and are enforceable through ERISA. *UNUM Life Ins. v. Ward*, 526 U.S. 358, 376-77, 119 S. Ct. 1380 (1999); *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 648 n.4 (9th Cir. 2000); *Cisneros v. Unum Life Ins. Co.*, 134 F.3d 939, 944 (9th Cir. 1998).

    **57.**  The Interim Final Rules explained that "the parity requirements for ... treatment limitations are applied on a classification-by-classification basis." Preamble, IFRs, 75 Fed. Reg. at 5412.  The Interim Final Rules established six "classifications of

benefits" for purposes of Parity Act compliance: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. Preamble, IFRs, 75 Fed. Reg. at 5413.  These categories were retained in the Final Rule. 29 C.F.R. § 2590.712(c)(2)(ii)(A). With respect to "intermediate services" – services that do not fit squarely within the "inpatient" or "outpatient" categories — classification is still required. 29 C.F.R. § 2590.712(c)(2)(ii)(A); *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc*., 852 F.3d 105, 116 (1st Cir. 2017) ("Intermediate services [are] services somewhere between traditional inpatient and outpatient care.").

58.     While the insurer has discretion with respect to whether intermediate services should be classified as inpatient or outpatient, all intermediate services must be in the same category.  78 Fed. Reg. 68240, at 68246-7 ("Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications.).  *See also id*. ("For example, if a plan or issuer classified care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.").

59.     The Final Rules directed that "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services" are nonquantitative "treatment limitations" under the Parity Act.

29 C.F.R. § 2590.712(c)(4)(ii) (emphasis added).  A blanket exclusion on residential treatment center programs is an exclusion of "facility type," and is therefore a nonquantitative treatment limitation.  As applied to mental health care, an insurer may not impose this nonquantitative treatment limitation

> with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

29 C.F.R. § 2590.712(c)(4).

60.     Aetna Life's practice of excluding all coverage for mental health treatment received at residential treatment center programs violates the Parity Act because it results in a categorical denial, on all occasions, for coverage for medically necessary services at licensed residential treatment center programs. Such categorical exclusion is permitted only if Aetna Life also categorically excludes coverage for medical/surgical services rendered at skilled nursing facilities. In fact, Aetna Life covers such services.

61.     Further, while Aetna Life  is free to adopt and incorporate standards that go beyond what Colorado requires from its residential treatment center programs, it cannot do so and be in compliance with the Parity Act <u>unless it similarly imposes burdens that go beyond Colorado's licensing requirements for skilled nursing facilities</u>. If, for example, Aetna Life required that skilled nursing facilities meet the licensure requirements for hospitals (which goes beyond what Colorado requires), then Aetna

Life's approach to residential treatment center programs *might* be in parity. But there is no suggestion by Aetna Life that it adopts extra-licensure coverage requirements for skilled nursing facilities, which are the Parity Act's express comparators here.

62.     In either case, Aetna Life has employed "processes, strategies, evidentiary standards" and other factors in assessing medically necessary services rendered at residential treatment center programs that are different than the standards it employs in assessing medically necessary services rendered at skilled nursing facilities. That violates the Parity Act.

### Count 3 – Violation of Parity Act Under 29 U.S.C. § 1132(a)(3) Brought by the Aetna RTC Fully Insured Class

63.     H.H., on his own behalf and on behalf of the class, restates paragraphs 1 – 46 as if fully set forth.

64.     Pursuant to 29 U.S.C. § 1132(a)(3) H.H. and the class seek to have Aetna Life provide the class with corrective notice and information, including reformation of the relevant health plan documents.

65.     29 U.S.C. § 1132(a)(3), through which H.H. and the class may enforce the Parity Act as set forth in ERISA at 29 U.S.C. § 1185a, further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms.  To the extent full relief is not available under 29 U.S.C. § 1132(a)(1)(B), then H.H. and the class seek equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution and surcharge arising out of

Aetna Life's failure to administer its ERISA insured health plans as governed by the applicable provisions of the Federal Parity Act.

### Count 4 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)
### Brought by the Aetna Wilderness PPO Class

66.     V.G. on her own behalf and the proposed class, restates paragraphs 1 – 46 as if fully set forth.

67.     V.G.'s first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B).

68.     V.G. and the class have standing to assert claims "to recover benefits due … under the plan" and to "clarify [their] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

69.      Aetna Life has breached the terms of its health plans by denying coverage for treatment provided by wilderness therapy programs. Aetna's plans define covered mental health residential treatment services as "[s]ervices for the evaluation and treatment of the psychological and social functional disturbances that are the result of subacute mental health conditions provided by an institution which specializes in the treatment of mental health conditions, provides a subacute, structured, psychotherapeutic treatment program under the supervision of physicians; provides 24-hour care in which a person lives in an open setting; and is licensed in accordance with the laws of the appropriate legally authorized agency." Under that definition, Aspiro and all other licensed wilderness therapy programs provide "inpatient mental health services" and are thus entitled to coverage. There is no corresponding exclusion for wilderness therapy.

70.     Aetna, in violation of its plan, denies coverage for medically necessary services rendered at licensed wilderness therapy programs. This caused injury to the plaintiff and the class.

71.     Plaintiff and the class she seeks to represent are entitled to recover benefits due them due to the improper exclusion of coverage of medically necessary mental health and/or substance abuse treatment in licensed wilderness therapy programs. They are also entitled to a declaration of their rights to coverage of medically necessary mental health and/or substance abuse treatment in licensed wilderness therapy programs.

### Count 5 – Violation of 29 U.S.C. § 1132(a)(3)
### Brought by the Aetna Wilderness PPO Class

72.     V.G., on her own behalf and on behalf of the class, restates paragraphs 1 – 46 as if fully set forth.

73.     Pursuant to 29 U.S.C. § 1132(a)(3) V.G.. and the class seek to have Aetna Life provide the class with corrective notice and information, including reformation of the relevant health plan documents.

74.     29 U.S.C. § 1132(a)(3) further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms.  To the extent full relief is not available under 29 U.S.C. § 1132(a)(1)(B), then V.G. and the class seek equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution and surcharge arising out of Aetna Life's failure to correctly administer its ERISA self-insured health plans.

**WHEREFORE**, plaintiffs request the following:

- Certification of the class described above with the appointment of plaintiffs as class representatives for the class and the undersigned attorneys as class counsel;

- An award of benefits representing those sums that plaintiffs and class members paid for services that should have been covered by defendant;

- Disgorgement of all profits defendant enjoyed through the use of money that should have been used to pay plaintiffs' and class members' legitimate claims;

- An order requiring defendant to cover all medically necessary services at residential treatment center programs and wilderness therapy programs in the future;

- An order requiring defendant to reprocess plaintiffs' and all class members' claims incurred at any time during the class period in conformity with the Court's orders concerning the proper interpretation of the plan language at issue;

- Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

DATED: June 14, 2018.

By: *Jordan M. Lewis*
**JORDAN LEWIS, P.A.**
Jordan Lewis
jordan@jml-lawfirm.com
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374

**ZEBERSKY PAYNE, LLP**
Edward H. Zebersky
ezebersky@zpllp.com
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, FL  33301

Tel: (954) 989-6333
Fax:  (954) 989-7781

*Attorneys for Plaintiffs*

**Courtesy Copy To:**

**Alex Acosta**
**Secretary**
**U.S. Department of Labor**
**200 Constitution Avenue N.W.**
**Washington, D.C. 20210**

**Steven Mnuchin**
**Secretary**
**U.S. Department of Treasury**
**1500 Pennsylvania Avenue N.W.**
**Washington, D.C. 20220**